Call our next case, Carlos Parra-Rojas v. Atty. General. May it please the Court, I'm Thomas Mosley, counsel for the petitioner, Mr. Rojas. I'd like to reserve three minutes for rebuttal. In this case of first impression within the Third Circuit, I'd like to begin by answering or attempting to answer the questions the Court posed in its January 14th letter. Conviction is not necessary to trigger the smuggling bar to inadmissibility. I agree with that proposition. What is important, however, and what is necessary, is the alien's unknowingly assist, encourage, aid, or abet someone to enter the United States illegally with a person not having authorization. And the only person in this situation, in this case, who could make the determinations lawfully with respect to conduct was the immigration judge. Under the case law and the applicable regulations, the Kaplan case we cite, the Board of Immigration decision, a matter of a demi-act, only Judge Durling could make those findings. And the only finding, if indeed you can call it a finding, that Judge Durling made was in his decision pre-termitting the adjustment application. And the only factual finding he made was that Mr. Rojas, Mr. Parra, did not all he did was transport the folks after they had already entered the United States. Sotomayor, you concede that that is correct, correct? Yes. Yeah. So the question then becomes, was he inadmissible under that section of 1182? Would that conceded conduct render him inadmissible under some other statutory provision, even if not inadmissible under this one? No, Your Honor. That conduct would not qualify as a crime. It's essentially, it's a transportation, count two would have been more appropriate, one can argue, than count one. Yes. Count two, certainly given the conduct, it would clearly have been more appropriate. Would count two, would that violation, well, we're looking at the actual conduct, the conduct underlying a transportation, you're saying that he's not inadmissible given that conduct? Yes. That's absolutely. Looking at the pre-sentence report and his admission that he was part of a smuggling conspiracy, and he did it three times, and he received a call from, was it Cole? And it was arranged that he would pick these people up. Doesn't that satisfy in aiding and abetting the entry when it was pre-arranged, looking at the matter of IM, looking at Soriano, isn't there a problem there that this, before the entry, Cole was arranging the entry of these people, contacted Power Rojas, Power Rojas agreed to do this. Isn't that an aiding, assisting, abetting of the entry by virtue of his agreement to do that? Well, Judge Rendell, I think we have two problems with respect to that. The first one is it's not entirely clear from this record that the judge, that Judge Dirling specifically admitted the pre-sentence report, number one. Number two, the judge Didn't he refer to the proceedings? Maybe it was the guilty plea. But he did not, but that was evidence that the government offered. The record is not clear. The government hadn't offered the plea agreement until after his interlocutory ruling. That's correct. They had the plea agreement. They offered the plea agreement after that ruling and before his final decision. Right, but they never offered, they never offered the pre-sentence report. But the IJ and the BIA referred to the pre-sentence report and did not refer to any of the other sentencing documents. But the judge, at appendix 269, the judge noted that the PSR stated the petitioner became involved with illegal alien smuggling after his first trip. That's the immigration judge. Yes, but And he admitted he smuggled aliens on two prior occasions. He concluded that respondent's actions as a principle were integral to the overall scheme of alien smuggling, 269. But he never, but he never, Judge Rendell, actually admitted the report. And I had specifically asked, and you'll see that throughout the hearing, I specifically asked for an evidentiary hearing on where Mr. Rojas would be given the opportunity to explain exactly what he did and what he knew and when he knew it. Well, of course, it's explained in the plea agreement and it's explained in the colloquy at the change of plea, which were documents that were submitted under 2255, right? That's correct. That's correct. But the finding, but Judge And the conduct he agreed to here, at least out of the sentencing documents that I can see, was that he had done alien smuggling before and he was getting, going to get paid by an alien smuggling operation. But his actual conduct here But, but, but what I, what I think is, what I think is, what I think is important here, Judge Berry, what I think is very important, is that the, is that he never got the opportunity to explain in an evidentiary hearing exactly what he knew, exactly what he knew about what was going on. All he, and indeed He knew, he said in the PSR, I'm part of a smuggling operation. Yes, but he I'm real sorry. I didn't want to do it. I'd have a good life. No, no, but, but, but Do you agree that if he was part of this, that if he did what he did in the PSR, that's aiding and abetting of the entry? I, I, I would not. I, I, I would not, Judge Rendell I'm not sure that that's clear either. I'm not, I would not, even if you take the, even if you take the PSR at face value, and I, and I think the PSR here has the same kind of problems that Your Honor identified in a bungled pronunciation. The Ezeguana case at 325, 396 of being interlaced with, with, with, with double and sometimes triple hearsay that he, that, that he could not have had the opportunity to respond to. But even if you take that You didn't really raise that. I was looking for that too. And that was the No, but I mean The second question of, is the PSR something we can rely on? Well, the, the, the, the problem, the problem, Judge Rendell, is the PSR was never formally admitted as part, as, as part of and, and, and what I had, what I had attempted to do, what I had attempted to do was to urge that we have an evidentiary hearing as a matter of simple basic due process where Mr. would, Mr. Perro-Rojas would have the opportunity to respond. The problem with the PSR, and perhaps I have an advantage here in having seen the colloquy of the police, but the problem with the PSR generally, and we were all district court judges in the, in our former lives, it, it, it can be loaded up. I mean, I'm not saying it was or here or ever is, but hypothetically, the prosecutor can load it up, then come into court and say, we're not taking position of sentencing, but you've got a PSR that's loaded, you know, closed up. This seems, this PSR, as I've looked at the, the underlying sentencing documents, seems pretty consistent with those documents and didn't go further. That's my own spin on it. But your knowledge thing in me, in my mind, falls flat for the same reason Judge Rendell. Isn't your better argument, and I know it's your alternative argument, that he had to do something affirmatively to assist the entry. Right. And, and, and see. That's it. That's the nature of my question. What affirmative step did he take to assist the entry? Was not, maybe, was not the entry complete before he. The entry was complete. He wasn't part of the, the chain that brought this person into the country. And, and the case law, for example, the, I think it's the Ninth Circuit case, the Erzsua case says that the smuggling stops when the, the original transporter brings the person in. But you could also say, but for his agreement to say, oh yeah, I'm not going to leave him in the parking lot. I'll take them to their destination. Because otherwise, they're not crossing the border unless we have someone who's going to pick them up from that parking lot. But there, but there, there's, there's no factual finding, Judge Rendell, that, that he was the essential cog and they're coming across the border, I think. I guess it's, it's whether you can infer that or not. Whether Cole would have said, if he couldn't do it, Cole wouldn't have done the entry until he found somebody who could. And, and. So it was one of the four things he had to arrange. This, I mean, this, this is another law school exam. But I mean, this is, well, no, I, I, I quite agree with you in that regard. And, and this isn't, this isn't the, this isn't the situation. I mean, he was a fungible, poor Mr. Parra-Rojas having lost his job, is a fungible commodity. I mean, they could have called any, you know, a gypsy cab service or, or anybody else. This, this, this. Well, but you're paying good money because it's important to the whole scheme. Well, paying pretty small money, but. He knew he was going to pick up a couple of people who'd entered. Right, but, but his, but his not, that his knowledge came of who they were and their illegal entry came only after he came there to, to, to pick, to pick them up. You're not going anywhere with me. Okay, no, I understand. No, I, I, I, I understand you very, so let me. Isn't your argument also, this isn't smuggling. This may be 1324, A1, A2, knowing or in reckless disregard to the fact that alien has come to and or remains in the United States, transports or moves or attempts to transport within the United States. Right, exactly, exactly. I mean. Well, this, this, this. That was the one that was dropped. Yeah, this is. That's the one that was dropped. That's the situation, that's the situation. Yeah, yeah. What, what. You don't smuggle someone into the country by driving them after they're here. Right, they're already, they're. You're telling me that under count two, which was dismissed. Mm-hm. He can't, he's not inadmissible. Exactly, he's not. If he had placed count two and not count one. Right. It doesn't matter. He wouldn't be here today. Exactly. It's, it's only, it's, it's, it's, it's only the, the so-called smuggling bar. And he didn't bring them, he didn't bring them across the border. Well, that's where I was confused by the whole brings to the argument. And that's why the letter said really, it's really the conduct. Because the brings to doesn't, I don't know if the brings to hurts you. I mean, I don't think the conviction hurts you as much as the conduct hurts you. It's, it's, it's, it's, it's the underlying conduct. But the underlying conduct is, is to transport these folks. Right. After they're all, after, after they're, they're already here. And. The successful smuggling operation doesn't take them across the border and just leave them there. That's true too. Yes, but he's not the person, Judge Roth, who brought them across the border. I know, but, but, but it's part of the whole, whole smuggling process. Not to just leave them at the border. Not to leave them one foot inside the border, but to get them out of there. But the smuggling, but the smuggling bar, which is very narrowly, I submit, constructed, is, is to assist, aid, et cetera, in bringing them across the border. Well, entry. Entry. Entry, which is a term of art meaning that. And that's not, and that, I submit, is, is not what happened here. Indeed, it's, it's cut off under the, the caseload of the government sites. The smuggling part of it's cut off once these folks are, once these folks are, are, are over here. And, and that's not, and that's, and that's not the case under these circumstances. Interesting case. Well, your, your friends will say that the initial transportation, you know, you're talking about the Ninth Circuit case, isn't over until he transports them into the interior of the destination. Well, no, actually I don't think that. So the question for me is then if that's all the initial transportation, what could possibly be a subsequent transportation? Well, exactly. And, and I think, I think the Ninth Circuit actually, as I recall the case, the Uruzua case, goes my way in saying that the smuggling stops when he's in, when the, the aliens are in. It's, I'm sorry. Well, that case says you need something. You need to do something. And he didn't. Okay. Interesting case. All right. We'll hear from you on rebuttal. Yes. Good morning. My name is Dawn Conrad and I'm here today on behalf of the United States Attorney General. In this case, the board properly found that Petitioner did not meet his burden to show that he is admissible in order to readjust his status. His conviction records clearly establish that he knowingly participated in the smuggling scheme by driving illegal aliens from a Mohawk reservation straddling the Canadian New York border to Queens, New York. He participated in this scheme at least three times and was paid approximately $500 per illegal alien plus expenses. But doesn't smuggling end with the initial transporter? No, I mean, it depends on, it depends is the answer to that question. I mean, the Ninth Circuit thinks so. The Ninth Circuit thinks so, but I don't think the Ninth Circuit would say it ends with Petitioner in this, before Petitioner's involvement in this case. Because Petitioner's involvement in this case was based on a preexisting scheme of smuggling aliens into the United States. I believe the PSR shows that the aliens expected to be transported to Queens, New York. Who says that an arrangement adds up to an assistance with the entry? You've specifically said, I think in a letter, that you don't think IM is controlling here. That's correct. And that's because in matter of IM, the board suggested that it leaves open the possibility that transportation due to a preexisting scheme constitutes assisted entry. The Fifth Circuit has also found that in Soriana. Right, but you said you're not relying on IM. You don't find it controlling. Well, it's not controlling to the way Petitioner argued that he was. Deportation, it was five year, entry had to be in five years for gain. Correct. There's just too many distinctions. It's an older statute. It's a 1957 case. Yes, that's correct. It's as old as I am. It's a much older version of the statute, Your Honor. It dealt with deportability. But you can look at the other decisions, more recent decisions from the other circuit courts, notably the Fifth Circuit and the Fourth Circuit. And they both hold that more that you don't have to be physically present at the border, shepherding them over. Yeah, but he doesn't argue. Even Mr. Parra doesn't argue that physical presence at the border is required. That's correct. But he is arguing that some sort of affirmative assistance is required in the entry. Your position is this. Tell me, I don't think, this is the red brief at 20 and at 27 and at 24. Your position is that he assisted aliens in their entry by providing transportation for them after they entered in exchange for payment from a smuggling organization. He completed a smuggling operation, right? That's correct, Your Honor. But there's not one affirmative step that he took to enable the aliens to enter. Well, we would argue that his driving them from the border region did enable them. To enter. Right. What affirmative step do you see that he took, if any, to enable them to enter, to assist them in entry? We can see that he picked them up on the U.S. side of the border. But the affirmative step is that his transportation as part of the preexisting smuggling scheme assisted in their entry. And I think as Judge Rendell pointed out earlier, you know, it could be part that they expected to go to a final destination and that could have changed their entry based on whether his transportation was provided. Does somebody who arranged for their dinner after they arrived, but for which they all would have died, you can play this out so that anybody who had some kind of role that was arranged ahead of time assisted in entry. Is that your argument, that the arrangement ahead of time to do something with respect to these people that was deemed to be part of what you had to do for them, was it aiding and abetting the entry? Well, obviously it would have to be decided on a case-by-case basis. But yes, we do think that the language is fairly broad. Maybe Cole called somebody and arranged for a hotel room for them, you know, six days after they're there because at that point they had to be hidden and this is, you know, a hotel room, and arranges for that. Is that assisting in the entry? Well, there are other circuit courts, and I don't know if it was Ramos or Hernandez in the 9th, just giving them money to come to the United States. Oh, that's different, that's before, that's money. That's giving them money to come across the border. It has a temporal and a locational nexus. That enables, that assists them to enter. Right. Without that money they would not have entered. Well, I think... The brother paid for the other brother. And I think what you have in this case is a similar situation. Without the transportation, would the aliens have entered? Well, let's look at the statutory provision that addresses this kind of conduct. Okay. That talks about transporting or moving within the United States in reckless disregard that they've illegally entered. That is not a grounds for inadmissibility, is it? I'm 1324A1A2i. Okay. That is not a ground for inadmissibility. How is someone to know, how is Mr. Parra-Rojas to intuit that he's a smuggler when, and invisible because he's a smuggler, when indeed the exact conduct that he definitely did is not grounds for inadmissibility? I wouldn't concede that that is per se not a grounds for inadmissibility. Just transporting them, if it's part of a prearranged scheme, as the record shows in this case. Now, if you just, for example... He didn't know that they were in until they were here, when he got a call saying they're here, pick them up. And it seems clear, I don't know if this is a PS article or anything, that they were going to bring the money with them. Whoever was going to come in would carry the money. I mean, even the payment, to the extent one can infer, was not made until after they were in this country. So, I just can't find, I can't find anything that, any step by which he assisted their actual entry. Well, it's meant to, in a broader, in a broader, you have to look at the statute more broadly, in that it's meant that, aided, assisted, abetted, when you actually participate in a pre-existing... That's the problem. Well, he... If it's a problem. He knowingly knew that they were, he knew that they were illegal aliens when he picked up. He participated in this scheme two times before. So, he is a repeat offender of this type of scheme, where he knew that they were illegal, and assisted in their entry by picking them up. He completed the smuggling organization scheme, basically. Assisted in their entry versus assist to enter. Is there a rule of lenity or something like that? If he had kept his mouth shut, then they wouldn't know that he participated before. So, it's his cooperation that's really gotten him in trouble, right? We did get three points, correct? Well, he could, I mean, no. I mean, if it was just his first time, I think they would have also reached the same conclusion in this case. Oh. In the criminal case. In the criminal case. And I'm talking about looking at the conduct beyond the criminal conviction that he admitted he was part of this smuggling ring. If he kept his mouth shut, we wouldn't have that to deal with. If we didn't, right. There would not be that information in the record. It is based on petitioner's own admissions and his plea agreement, which is what is quoted in the pre-sentence report. A good chunk of the factual admissions of the plea agreement. So, he completed the smuggling operation even though he didn't take any act to enable them to enter? Yes, but he assisted in their entry by completing the smuggling operation. I guess we know your position. Thank you. And then, also, we believe the record shows that this was all done knowingly, so it meets the mens rea requirement of 1182.86e. And if the court does not have any further questions, we respectfully ask the court to deny the petition for review. Thank you. Thank you. Thank you. Just very briefly, Judge Roth, if you would ask about lenity, I would submit if there's any doubt. Oh, I apologize. If there's any doubt about construing the smuggling section, I think that that doubt should be resolved in our favor. The other point I'd just like to make, even if you take the pre-sentence report at face value, these people had been here for at least a day or two before he came to pick them up. So, we have a situation, I would submit, where the language where the smuggling came to a stop, he came into transport, he shouldn't be held inadmissible. We urge the court to vacate the Board of Immigration Appeals decision, remand the case, so we can have a hearing on his adjustment application for a citizen wife and son. You know, the concept of aiding and abetting is pretty broad. In order to aid and abet, to commit a crime, it's necessary a defendant in some sort associate himself with the venture, that he participate in it as something that he wishes to bring about and that he seek by his actions to make it succeed. Is there a kind of a mental element here that either is or isn't present? There's no finding of a mental element that he had any intention or association with respect to bringing these people into the country. They came into the country, he had nothing to do with their coming into the country. They were already here, he was called in to transport them. And that, I submit, doesn't meet the burden of the statute and deny him an admissibility. Deny him admissibility. Thank you. Thank you very much. Cases will be taken under advisement.